25CA2257 Peo in Interest of DRS 07-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2257
Arapahoe County District Court No. 24JV195
Honorable Bonnie McLean, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of D.R.S., a Child,

and Concerning K.A.S. and C.B.,

Appellants.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE WELLING
Schock and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

---

John Christofferson, Interim County Attorney, Tamra White, Assistant County
Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant K.A.S.

Harald Van Gaasbeek, Office of Respondent Parents' Counsel, Fort Collins,
Colorado, for Appellant C.B.

¶ 1     K.A.S. (mother) and C.B. (father) appeal the summary judgment adjudicating D.R.S. (the child) dependent or neglected. We reverse and remand to the juvenile court for further proceedings.

## I.     Background

¶ 2     The Arapahoe County Department of Human Services filed a petition in dependency or neglect concerning the then seven-month-old child.  The petition alleged that both parents were incarcerated and that the child's designated caregiver, L.R., was abusing alcohol, was living in a dirty motel room, and exposed the child to domestic violence.

¶ 3     The juvenile court held a hearing and granted temporary custody to the Department.  Both parents denied the allegations and requested a jury trial.  The juvenile court responded:

> You want a jury trial?  Okay.  Mom is doing
> ten years in the department of corrections, and
> dad is doing eight years in the department of
> corrections.  I was hoping to take this a little
> kindler [sic], gentler approach, but if we are
> going to . . . go to war, then let's tee it up, and
> I would absolutely expect a motion for
> summary judgment.

1

¶ 4    The Department then moved for summary judgment, asserting that the child was dependent or neglected under section 19-3-102(1)(c), C.R.S. 2025.  The Department alleged that the parents were unavailable to care for the child because they were incarcerated and that L.R. had created an injurious environment because he had been arrested and left the child without a caregiver. The Department also argued that there had been "a judicial finding that [the child] was in fact not left in the care of a safe individual" and "[b]ecause of this judicial finding there [was] no genuine issue of material fact regarding if mother left the child in the care of an appropriate caregiver when she left the child with L.R."  The Department attached several documents to its summary judgment motion, including (1) a transcript of the temporary custody hearing; (2) screenshots from the Colorado Department of Corrections (DOC) offender search website; (3) screenshots of domestic violence charges filed against L.R.'s ex-girlfriend; and (4) a verbal removal order.

¶ 5    Both parents opposed summary judgment and filed, among other attachments, an affidavit from L.R.  The parents argued that "genuine issues of material facts exist[ed]" that precluded the court

from granting summary judgment, because L.R. "remain[ed] an able and willing caregiver for [the child]."

¶ 6     The juvenile court granted the motion for summary judgment, adjudicated the child dependent or neglected, and vacated the adjudicatory jury trial.

## II.     Summary Judgment

¶ 7     Both parents contend that the juvenile court erred by granting summary judgment, alleging that the supporting evidence provided by the Department was inadmissible and that genuine issues of material fact remained.  We agree.

### A.     Adjudication Criteria

¶ 8     As relevant here, a child is dependent or neglected if "[t]he child's environment is injurious to his or her welfare."  § 19-3-102(1)(c).  Although the statute doesn't define "injurious environment," the Department must show that the child is "in a situation that is likely harmful to that child."  *People in Interest of J.G. v. M.L.*, 2016 CO 39, ¶ 26.  This situation generally must exist as of the date of the adjudication.  *People in Interest of N.G.*, 2012 COA 131, ¶ 25.  A child may also be adjudicated dependent or neglected based on prospective harm — that is, when the child's

environment will be injurious to the child's welfare in the future. *People in Interest of S.N. v S.N.*, 2014 CO 64, ¶ 12. "[W]hen a child has been removed from the child's parents, the relevant environment is the one the child is in — or would be in — while in the custody of the parents." *People in Interest of C.M.*, 2024 COA 90, ¶ 27.

B.    Summary Judgment Principles and Standard of Review

¶ 9    Although summary judgment is available in dependency and neglect cases, it's a drastic remedy and is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *S.N.*, ¶¶ 15, 18; *see* C.R.C.P. 56(c).

¶ 10    The moving party may use pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to meet this burden. C.R.C.P. 56(c). While the form of the evidence supporting a motion for summary judgment need not be admissible at trial, the content or substance of the evidence must be admissible. *S.N.*, ¶ 16.

¶ 11    If the moving party doesn't meet this burden, summary judgment must be denied. *People in Interest of M.M.*, 2017 COA

4

144, ¶ 13. But if the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate a controverted material factual question. *S.N.*, ¶ 16. A court must give the nonmoving party all favorable inferences that can be drawn from the undisputed facts. *Id.*

¶ 12    Generally, whether a child is dependent or neglected presents a mixed question of fact and law because it requires the application of statutory grounds to evidentiary facts. *Id.* at ¶ 21. But we review de novo a juvenile court's grant of summary judgment. *M.M.*, ¶ 11.

## C.    Analysis

¶ 13    As an initial matter, we note that the parents conceded that they wouldn't be able to care for the child because of their incarceration. But "incarceration of a parent cannot be the sole basis for an adjudication . . . ." *People in Interest of S.B.*, 742 P.2d 935, 939 (Colo. App. 1987).

¶ 14    With the parents' incarceration in mind, we review the motion for summary judgment de novo and conclude that the relevant content and substance of the Department's attachments aren't admissible. Thus, the Department didn't meet its burden of

establishing that there is no genuine issue of material fact that the child was in an injurious environment.

### 1. Hearsay

¶ 15   We agree with the parents that the caseworker's testimony, although admissible at a temporary custody hearing, contained inadmissible hearsay for purposes of summary judgment.

¶ 16   Hearsay — a statement other than one made by the declarant while testifying that is offered to prove the truth of the matter asserted — is generally inadmissible.  CRE 801(c); CRE 802.  But hearsay may be admitted under one of the recognized exceptions to the hearsay rule.  *See* CRE 803.

¶ 17   Affidavits based on inadmissible hearsay are insufficient to support summary judgment.  *See People v. Hernandez & Assocs., Inc.*, 736 P.2d 1238, 1240 (Colo. App. 1986); *see* CRE 802.  Unlike a motion for summary judgment, at a temporary custody hearing, the juvenile court may receive "[a]ny information having probative value . . . regardless of its admissibility under the Colorado rules of evidence."  § 19-3-403(3.6)(a)(II), C.R.S. 2025.

¶ 18   The Department attached a transcript of the temporary custody hearing to the summary judgment motion in support of its

6

allegation that L.R. exposed the child to an injurious environment. The caseworker testified that the Department received information from two unidentified sources that

- L.R.'s hotel room had "an overwhelming smell of urine . . ., blood on the bedsheets, individuals coming in and out . . . who were possibly homeless," and people "using drugs called blues";

- dogs in the hotel room had "scraped or scratched" the child;

- the child had "rolled off" a bed;

- L.R. consumed "multiple bottles of alcohol" while caring for the child; and

- L.R. was holding the child during a "domestic violence incident."

¶ 19    But the caseworker didn't "observe any of these concerns directly when [she] visited the hotel." Thus, the caseworker's testimony failed to show that she had personal knowledge of the relevant facts. *See* C.R.C.P. 56(e) (affidavits in support of a summary judgment motion "shall be made on personal knowledge"). The contents of the transcript are therefore hearsay, and we see no

basis to determine that the relevant testimony falls within any exception to the hearsay rule.

### 2. Genuine Issues of Material Fact

¶ 20 The parents also demonstrated the existence of "disputed material facts." *S.N.*, ¶ 16.

¶ 21 Regarding L.R.'s substance use, the caseworker testified that L.R. admitted that he drank regularly, "up to three beers a night." But the caseworker only observed "a case of Coors alcohol glass bottles," and "did not see any open . . . bottles at that time on any counters." And when L.R. was placed on urinalysis (UA) testing, only his first two tests were positive for alcohol. Thereafter he was "able to abstain from alcohol completely and submitted seven clean UAs."

¶ 22 Regarding the domestic violence incident, the caseworker testified that L.R. and his ex-girlfriend were both arrested because of the incident. But L.R.'s charges were dismissed and, in his affidavit, he denied committing any act of domestic violence. He also denied that the child was present during the incident. L.R. stated that he understood "the impact exposure to domestic violence can have on a child," so he ended his relationship with his

ex-girlfriend and had not lived with her since the incident. Moreover, L.R. stated that he had arranged temporary care for the child when he was arrested, but "that it was against [law enforcement] policy to release [the child] to the care of anyone but the Department of Human Services." After L.R.'s release — less than twenty-four hours after his arrest — he contacted the Department and "expressed [his] desire to have [the child] returned to [his] care."

¶ 23    Finally, L.R. confirmed that his "current and future living arrangements [were] appropriate for [the child]," that he was "willing and able to have [the child] in [his] care and custody," and that he was "willing to work with the Arapahoe County Department of Human Services ongoing to address and mitigate any concerns they have."

¶ 24    Viewing this evidence in the light most favorable to the parents, as we must, we conclude that the Department failed to establish the absence of a genuine issue of material fact regarding whether the child was or would be exposed to an injurious environment if returned to L.R. *See Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co.*, 2017 COA 31, ¶ 40 ("An issue of fact

may arise from the existence of conflicting permissible inferences from evidence accepted as true." (quoting *Fin. Assocs., Ltd. v. G.E. Johnson Constr. Co.*, 723 P.2d 135, 138 (Colo. 1986))); *Raygor v. Bd. of Cnty. Comm'rs*, 21 P.3d 432, 435 (Colo. App. 2000) ("Where evidence is susceptible of a contradictory, yet reasonable interpretation, summary judgment is not appropriate.").

¶ 25    Accordingly, we conclude that the juvenile court erred by granting summary judgment based on an injurious environment under section 19-3-102(1)(c) and by adjudicating the child dependent or neglected.

### III.    Disposition

¶ 26    The judgment is reversed, and the case is remanded to the juvenile court for further proceedings consistent with this opinion.

¶ 27    On remand, the juvenile court must also comply with the provisions of the Indian Child Welfare Act and inquire of father whether he knows or has reason to know that the child is an Indian child.  *See* § 19-1.2-107(2), C.R.S. 2025.

JUDGE SCHOCK and JUDGE LUM concur.